Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

Argued March 18, 2003          Decided July 8, 2003

No. 02-5003

ASSASSINATION ARCHIVES AND RESEARCH CENTER,
APPELLANT

v.

CENTRAL INTELLIGENCE AGENCY,
APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 99cv00525)

---

*James H. Lesar* argued the cause for the appellant.

*G. Michael Harvey*, Assistant United States Attorney, argued the cause for the appellee. *Roscoe C. Howard, Jr.*, United States Attorney, and *R. Craig Lawrence*, Assistant United States Attorney, were on brief.

---

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

2

Before: SENTELLE, HENDERSON and TATEL, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: The appellant, Assassination Archives and Research Center (AARC), brought suit under the Freedom of Information Act (FOIA or Act), 5 U.S.C. §§ 552 *et seq.*, to compel disclosure by the Central Intelligence Agency (CIA or Agency) of a multi-volume compendium of information on "Cuban Personalities" (Compendium) prepared by the Agency in 1962. The CIA withheld disclosure of the entire Compendium on the grounds that the documents contained in it are classified SECRET and that disclosure is exempt under the National Security Act of 1947, 50 U.S.C. § 403–3(c)(7). The district court upheld the Agency's decision, granting summary judgment in its favor. *AARC v. CIA*, 177 F. Supp. 2d 1, 6–12 (D.D.C. 2001).

AARC argues that the CIA failed to carry its burden to establish a FOIA exemption from disclosure and that, in any event, the Agency waived any exemption available under the Act because information regarding Cuban nationals had already been disclosed pursuant to the John F. Kennedy Assassination Records Collection Act (JFK Act), Pub. L. No. 102–526, § 2(b), 106 Stat. 3443 (1992) (codified at 44 U.S.C. § 2107 note). We reject AARC's arguments and instead affirm the district court.

I.

In February 1993, AARC filed a FOIA request with the CIA. It sought the release of the Compendium, a five-volume set of documents on Cuban personalities compiled in November 1962 by the CIA's Biographic Register, Office of Central Research. Initially, the CIA declined to waive copying fees—concluding that 5 U.S.C. § 552(a)(4)(A)(iii), which allows documents to be furnished at no charge or a reduced rate if the information sought is "likely to contribute significantly to public understanding of the operations and activities of the government," was not applicable—and AARC filed the instant lawsuit. The district court directed the CIA to waive copying fees associated with AARC's request.

3

The CIA then began processing AARC's request and, on March 21, 2000, informed AARC by letter that the Compendium was exempt from disclosure under Exemptions 1 and 3 of FOIA. 5 U.S.C. § 552(b)(1), (3).[1] AARC appealed the decision through the Agency review process but the Agency determined the appeal was moot because AARC had already initiated this litigation. The CIA subsequently moved for summary judgment, *AARC*, 177 F. Supp. 2d at 3, supporting its motion with the declaration of Herbert Briick, the Information Review Officer for the CIA Directorate of Intelligence, who explained that the Compendium represents a "compilation of personality profiles of, or biographic data on, a number of Cuban individuals" that includes non-classified biographies, which are as a general rule based on "open source information," although profiles that are marked SE-CRET are so identified because they rely on "information collected clandestinely." Declaration of Herbert Briick at ¶¶ 14, 19 (July 5, 2000) (First Briick Decl.), App. 34, 36–37. Notwithstanding the nature of the sources from which the contents of the Compendium derive varies, the entire Compendium was classified, Briick declared, because of the purpose behind the Compendium and the fact that disclosure of information might reveal intelligence methods and sources. *Id.* at ¶ 15, App. 34–35.[2] As a result, the Agency argued that

---

[1] Exemption 1 exempts matters that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). Exemption 3 protects matters "specifically exempted from disclosure by statute . . . , provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3).

[2] Although the Briick Declaration does not expressly explain the purpose, at oral argument the CIA stated the purpose of the Compendium was to identify Cuban nationals who could lead the country if Castro was ousted. Tape of Oral Argument, Mar. 18, 2003.

4

the Compendium qualified for nondisclosure under both Exemptions 1 and 3 of FOIA, 5 U.S.C. § 552(b)(1), (3).

On the other hand, AARC offered evidence rebutting the CIA's exemption claims and, in addition, asserted that the CIA had waived any FOIA exemption with respect to at least some of the material contained in the Compendium. *AARC*, 177 F. Supp. 2d at 7–8. Specifically, AARC proffered the declaration of John M. Newman, an associate professor at the University of Maryland, who opined that the CIA's position on nondisclosure was erroneous because similar, if not identical, information had already been disclosed pursuant to the JFK Act. *Id.*; Declaration of John M. Newman at ¶ ¶ 7–9 (Sept. 24, 2000) (Newman Decl.), App. 53–54. According to Newman, the CIA's national security interest in preventing disclosure of information contained in the Compendium was minimal. Nonetheless, the district court concluded, first, that the Agency was entitled to summary judgment on both exemptions and, second, that the Agency had not waived its claim to exemptions. *AARC*, 177 F. Supp. 2d at 5–12. AARC then filed the instant appeal.

II.

We review the district court's grant of summary judgment *de novo*. *Summers v. Dep't of Justice*, 140 F.3d 1077, 1079 (D.C. Cir. 1998). In the FOIA context, *de novo* review requires the court to " 'ascertain whether the agency has sustained its burden of demonstrating that the documents requested are not "agency records" or are exempt from disclosure under the FOIA.' " *Id.* at 1080 (quoting *Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994) (internal citations omitted)).

The FOIA requires every federal agency, upon request, to make "promptly available to any person" any "records" so long as the request "reasonably describes such records." 5 U.S.C. § 522(a)(3). The Act "reflects a general philosophy of full agency disclosure," *Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (internal quotations omitted), but also provides for several exemptions under which an agency may deny

5

disclosure of the requested records. 5 U.S.C. § 552(b). The exemptions—there are nine—reflect the "Congress's recognition that the release of certain information may harm legitimate governmental or private interests." *Summers*, 140 F.3d at 1080. If an agency invokes an exemption, it bears the burden of establishing the applicability of the claimed exemption. *Summers*, 140 F.3d at 1080. And, even if an agency establishes an exemption, it must nonetheless disclose all reasonably segregable, nonexempt portions of the requested record(s). 5 U.S.C. § 552(b).

Here, section 102(d)(3) of the National Security Act of 1947, 50 U.S.C. § 403–3(c)(7), which directs the CIA Director to "protect intelligence sources and methods from unauthorized disclosure," is a statute that shields qualifying information from disclosure under the Act because it meets the two criteria of Exemption 3. *CIA v. Sims*, 471 U.S. 159, 178–79 (1985); *see supra* note 1 (setting forth Exemption 3). We held that section 102(d)(3) qualifies under Exemption 3 if the records sought "can reasonably be expected to lead to unauthorized disclosure of intelligence methods and sources." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

The Agency, through Briick, explained that disclosure of the contents of the Compendium, which includes the "pool in 1962 of potential intelligence sources or targets of CIA intelligence collection," would "reveal those individuals in whom CIA had an intelligence interest and would provide leads to identifying the intelligence sources who or which acquired the information." First Briick Decl. at ¶¶ 15, 19, App. 34, 37; *id.* at ¶¶ 20–38, App. 37–49. In view of the weight we give the Agency's judgment as to the effect of disclosure, *Sims*, 471 U.S. at 174–75, 179; *Fitzgibbon v. CIA*, 911 F.2d 755, 766 (D.C. Cir. 1990) ("The assessment of harm to intelligence sources, methods and operations is entrusted to the Director of Central Intelligence, not to the courts."); *see Afshar v. Dep't of State*, 702 F.2d 1125, 1133 (D.C. Cir. 1983) ("[U]nless it senses bad faith or a general sloppiness in the declassification or review process, a court will feel with special urgency the need to accord substantial weight to an agency's affidavit concerning the details of the classified status of the disputed

6

record . . . ." (internal quotations omitted)); *see also Goldberg v. Dep't of State*, 818 F.2d 71, 78 (D.C. Cir. 1987) ("[We] accord those affidavits 'substantial weight,' considering the agency's unique insights into what adverse [e]ffects might occur as a result of public disclosure." (internal quotations omitted)), *cert. denied*, 485 U.S. 904 (1988), we have no trouble concluding that the Agency may withhold the contents of the Compendium pursuant to Exemption 3 of FOIA.[3]

---

[3] Because we conclude that the Agency easily establishes that the records AARC seeks are exempt from disclosure under Exemption 3, we do not consider the applicability of Exemption 1. AARC also argued, first, that the Agency inadequately explained why it could not reasonably segregate and disclose nonexempt portions of the Compendium as required by 5 U.S.C. § 552(b) and, second, that the Briick Declaration does not meet the specificity requirements of *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974). Regarding AARC's first argument, we find the Agency's showing that the Compendium is not segregable adequate. As Briick explained, "Release of the information in this document would specify precisely which Cuban nationals were and were not of interest to the CIA . . . . Such an explication of CIA interests would provide key insights into current CIA intelligence targeting and analytic processes." First Briick Decl. ¶ 38, App. 49. Because the Compendium contains "personality profiles and biographic data on persons of intelligence interest to CIA[,] [b]y definition, the release of information from such a profile, or the release of such biographic data, directly or indirectly reveals information about the individual discussed." *Id.* at ¶ 39, App. 50. To reveal even the names of the individuals or the number of names contained in the Compendium, Briick said, would "reveal CIA interest" and "the extent of the U.S. intelligence collection effort directed at Cuba in the 1960s." *Id.* Thus, he suggested, even partial release of the substantive biographic data—which comprise the Compendium—threatens the disclosure of intelligence sources and methods. *Id.*

As to AARC's second argument, under *Vaughn*, in order "to permit adequate adversary testing of the agency's claimed right to an exemption," *Schillier v. NLRB*, 964 F.2d 1205, 1209 (D.C. Cir. 1992), we require an agency to provide information justifying the exemption that is as specific as possible "without actually disclosing

7

Indeed, AARC does not dispute that the Agency could withhold the Compendium under Exemption 3 but for the earlier disclosures under the JFK Act. AARC argues that those disclosures have either (1) already revealed all intelligence sources and methods used in the Compendium, thereby making the CIA's invocation of Exemption 3 meritless or (2) effected a waiver of the Exemption with respect to at least some of the information in the Compendium.

On AARC's first contention, we side with the Agency. The Agency has explained that notwithstanding the JFK Act disclosures, releasing the Compendium would lead to the revelation of intelligence sources and methods. AARC maintains that:

> the CIA has released thousands of pages of records that reveal the Agency's use of mail intercepts, phone intercepts, penetrations of Cuban diplomatic missions and other sources and methods used to collect information on these Cuban personalities [and that] [i]n many instances, the CIA cryptonyms for these operations already have been released too, especially where these sources and methods were connected to gathering information on Cuban personalities.

Newman Decl. ¶ 8, App. 53–54. However, as Briick explained in response to Newman's conclusion that disclosure of the Compendium would be harmless, the Agency has never "released any portion of the document in any form at any time, whether as part of the [JFK Act] or otherwise." Supplemental Declaration of Herbert Briick at ¶ 7 (Nov. 30, 2000), App. 58 (Briick Supp. Decl.). Briick attests, moreover, that

> [R]elease of the information contained in the 'Cuban Personalities' document would be expected to reveal the identity of a confidential human source or reveal information about the application of an intelligence source or method, or reveal the identity of a human intelligence

---

information that deserves protection." *Oglesby v. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996). We think that Briick's Declaration meets the *Vaughn* specificity standard.

8

source when the unauthorized disclosure of that source would clearly and demonstrably damage the national security interests of the United States.

*Id.* at ¶ 6, App. 58. Given our deference to the Agency's judgment on the matter, *Sims*, 471 U.S. at 179, we uphold the Agency's determination that disclosure of the Compendium, even in light of the JFK Act disclosures, "can reasonably be expected to lead to the disclosure of intelligence sources and methods." *Gardels*, 689 F.2d at 1103.

Regarding its waiver claim, AARC relies on *Afshar v. Department of State*, 702 F.2d at 1130, which holds that an agency may waive its claim that information is exempt from disclosure if a FOIA plaintiff carries his "burden of pointing to specific information in the public domain that appears to duplicate that being withheld." *Id.*; *Public Citizen v. Dep't of State*, 11 F.3d 198, 201 (D.C. Cir. 1993); *Fitzgibbon*, 911 F.2d at 765. Because the Compendium contains a comprehensive collection of information about Cuban operatives and because the biographies of several Cuban operatives were released under the JFK Act, AARC argues, at least *some* information contained in the Compendium must have already been disclosed; therefore, AARC concludes, the Agency has waived Exemption 3 with regard to such material.[4]

*Afshar* requires a FOIA plaintiff to show that an agency's previous disclosure "appears to duplicate" the material sought, *Afshar*, 702 F.2d at 1130, i.e., that the disclosure is "as specific as" and "match[es]" the sought material. *Fitzgibbon*, 911 F.2d at 765 (citing *Afshar*, 702 F.2d at 1133); *Public Citizen*, 11 F.3d at 201. In *Public Citizen v. Department of State*, the FOIA plaintiff sought the disclosure of documents relating to a meeting between the then-Ambassador to Iraq and the President of Iraq. 11 F.3d at 199. The plaintiff

---

[4] *Fitzgibbon* emphasized that an agency waives an Exemption 3 claim only if it has made an "official disclosure" of the information. *Fitzgibbon*, 911 F.2d at 765. Because we conclude *infra* that AARC failed to show that the JFK Act disclosures revealed the "specific" information sought from the Compendium, we do not consider whether the JFK Act disclosures were "official" under *Fitzgibbon*.

9

argued that the State Department had waived its Exemption 1 claim because the ambassador had testified before the Congress about the meeting.[5] We rejected the plaintiff's argument because it did not "meet *Afshar*'s requirement that it show that [the ambassador's] testimony was 'as specific as' the documents it seeks in this case, or that her testimony 'matches' the information contained in the documents." *Public Citizen*, 11 F.3d at 203 (citing *Fitzgibbon*, 911 F.2d at 765). Even if her testimony effected "partial disclosures of classified information" contained in the requested documents, we said, those disclosures did not result in waiver because they did not precisely track the records sought to be released. *Public Citizen*, 11 F.3d at 203–04.

Similarly, here, it may be that some information disclosed pursuant to the JFK Act is included in the Compendium.[6]

---

[5] We noted in *Public Citizen* that *Afshar* is relevant to both Exemptions 1 and 3. *Public Citizen*, 11 F.3d at 202 n.4.

[6] We highlighted how specific the FOIA plaintiff's showing must be under *Afshar* in *Davis v. Department of Justice*, 968 F.2d 1276, 1279–80 (D.C. Cir. 1992). In that case, the Justice Department resisted disclosure of tape recordings made during a criminal investigation of a reputed mafioso. *Id.* at 1278. Although the government conceded waiver as to the tapes that were played at trial and agreed to release tapes for which the plaintiff could provide trial transcripts, we held that the plaintiff's reliance on newspaper stories that generally referred to the tapes did not meet the specificity requirement. *Id.* at 1280. We emphasized that the plaintiff had to show "the exact portions" of the tapes that were played. *Id.*

In *Davis* we also noted that as a practical matter waiver under *Afshar* yields the FOIA plaintiff little new information. *Id.* Indeed, if a plaintiff can establish that the specific records he seeks have become " 'freely available, there would be no reason to invoke the FOIA to obtain access to the information.' " *Id.* (quoting *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 764 (1989) (internal quotations omitted)). We suggested that, although the government "[was] willing to give Davis only exactly what he can find in hard copy," that meant that Davis would receive

10

But AARC must show that information duplicates the contents of the Compendium and it has not met this burden. AARC's only showing came from Newman who stated that the CIA made "300,000 pages of its records available," that "[a] very high percentage of this volume of documents concerned Cuba, Cuban exiles and Cuban exile organizations" and that, in his judgment, "the overwhelming majority of Cuban personalities in whom the CIA has had an interest have been disclosed under the JFK Act." Newman Decl. at ¶ ¶ 5, 9, App. 52, 54. Newman, however, made no *specific* showing that any of the JFK Act disclosures revealed information that is "as specific as" and "match[es]" that included in the Compendium. *Fitzgibbon*, 911 F.2d at 765. In fact, what we know about the contents of the Compendium comes from the Agency, which explains that the Compendium represents "the pool in 1962 of potential intelligence sources or targets of CIA intelligence collection," First Briick Decl. ¶ 15, App. 34, and that it has "never released this document, nor has it ever released any portion of the document in any form at any time, whether as part of the [JFK Act] or otherwise." Briick Supp. Decl. at ¶ 6, App. 58. Because we cannot conclude that AARC has shown that specific portions of the Compendium have been disclosed, we reject its contention that the Agency has waived FOIA Exemption 3.

For the foregoing reasons, we affirm the judgment of the district court.

*So ordered.*

---

"merely the added value of voice inflection" if he established waiver. *Id.*